IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KAREN F. HAYES, Personal Representative of the Estate of Thomas J. Hayes, Deceased;<br><br>                    Plaintiff,<br><br>        vs.<br><br>NEBRASKA, KANSAS & COLORADO RAILWAY, LLC, a Delaware Limited Liability Company; and  NUTRIEN AG SOLUTIONS, INC., a Delaware Corporation;<br><br>                    Defendants. | **8:20CV201**<br><br>**MEMORANDUM AND ORDER** |

This case is before the court on the Motions for Jurisdictional Discovery (Filing Nos. 126 and 142) filed by Third-Party Plaintiff Nebraska, Kansas & Colorado Railway, LLC ("NKCR") against Third-Party Defendants Canadian National Railway Company ("CNR"), Wisconsin Central Ltd ("Wisconsin Central")  Soo Line Railroad Co. ("Soo Line"), and Canadian Pacific Railroad Co. ("Canadian Pacific"). For the reasons discussed below, leave to conduct jurisdictional discovery (as to all foregoing third-party defendants) will be denied.

## BACKGROUND

On June 1, 2020, Plaintiff Karen Hayes ("Plaintiff") sued NKCR, among other named defendants, for negligence related to the alleged wrongful death of her decedent, Thomas J. Hayes ("Decedent"). (Filing No. 1). Plaintiff asserts that NKCR was negligent in accepting, transporting, and providing for use a railcar (MOCX412494) with an allegedly defective hand-braking system and that the alleged defects were the proximate cause of Decedent's death.

1

NKCR, in turn, filed a third-party complaint against several other railroad entities. The third-party complaint, as amended, (Filing No. 86) asserts claims for indemnification and contribution from CNR, Wisconsin Central, Soo Line, and Canadian Pacific (among others) related to the claims asserted by Plaintiff against NKCR.

NKCR claims that CNR, Wisconsin Central, Soo Line and Canadian Pacific all "moved MOCX412494 on multiple occasions and significantly more than the single time NKCR moved the railcar." (Filing No. 86 at CM/ECF p. 9). As a result, NKCR asserts that " [t]o the extent the trier of fact determines NKCR is liable to Plaintiff—which NKCR disputes—then NKCR is entitled to indemnification and/or contribution from the Third-Party Defendants, including for all liabilities, expenses, attorney fees, court costs, and damages incurred." (Filing No. 86 at CM/ECF p. 2).

CNR, Wisconsin Central, Soo Line and Canadian Pacific have all moved to dismiss NKCR's third-party claims against them, arguing that this court does not have personal jurisdiction over any of the foregoing entities.

NKCR claims that personal jurisdiction is proper and that each motion to dismiss should be denied. However, NKCR asks the court for leave to conduct limited jurisdictional discovery "[t]o the extent further jurisdictional allegations are required." (Filing No. 127 at CM/ECF p. 2). NKCR's jurisdictional discovery request is opposed by each entity.

ANALYSIS

NKCR does not argue that a Nebraska court has general personal jurisdiction over CNR, Wisconsin Central, Soo Line and Canadian Pacific. Rather, it claims this court may exercise specific personal jurisdiction over these nonresident railroads. A

2

court may exercise personal jurisdiction over a nonresident defendant only if the forum state's "long-arm statute is satisfied," and the defendant had "minimum contacts" with the forum such that the Fourteenth Amendment's Due Process Clause is not offended. Williams v. Gould, Inc., 443 N.W.2d 577, 585 (Neb. 1989) (citations omitted).

Nebraska's long-arm statute permits a Nebraska court to exercise personal jurisdiction to the fullest extent afforded under the Due Process Clause; that is, a defendant's conduct must "create a substantial connection with the forum state" and "[t]he suit must arise out of or relate to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017) (internal quotations omitted). The minimum contact inquiry focuses on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253 (1958).

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1977); see also NuTone, Inc. v. Jakel, Inc., No. 8:07CV305, 2009 WL 1974441, at *2 (D. Neb. July 6, 2009) ("It may be appropriate to permit jurisdictional discovery to establish whether personal jurisdiction is justified."); Marolf v. AyA Aguirre & Aranzabal S.A., No. 4:09CV3221, 2010 WL 964956, at *2 (D. Neb. Mar. 10, 2010) (same).

The court should, within its discretion, allow jurisdictional discovery where the plaintiff "can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." Shoemoney Media Grp., Inc. v. Farrell, No. 8:09CV131, 2009 WL 1383281, at *6 (D. Neb. May 14, 2009) (citation omitted). However, "a plaintiff's discovery request will nevertheless be denied if it is only based on 'bare, attenuated,

unsupported assertions[.]'" Id. (citing Lakin v. Prudential Securities, Inc., 348 F.3d 704, 713 (8th Cir.2003)); Anderson v. Nebraska, No. 4:17-CV-3073, 2018 WL 2050560, at *6 (D. Neb. Apr. 27, 2018) ("when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery").

NKCR previously moved for jurisdictional discovery as to Third-Party Defendant Norfolk Southern Railway Co. ("NSRC"). Applying the preceding standard, the undersigned determined that NKCR had not stated a sufficient basis to propound jurisdictional discovery on NSRC. The court found that "the relationship between [NSRC's] alleged action and the actions giving rise to this lawsuit is too attenuated to justify the jurisdictional discovery requested by NKCR." (Filing No. 84 at CM/ECF p. 5). That order was affirmed by Chief Judge John M. Gerrard over NKCR's objection. (Filing No. 110).  Both the undersigned and Judge Gerrard  noted that the scope of NKCR's proposed inquiry was extremely broad. NKCR's motion was denied, in part, because it failed to narrowly tailor its requests to the specific needs of case. (Filing No. 110 at CM/ECF p. 3).

On its current motions, NKCR attempts to limit the scope of its inquiry, presumably to rectify the proportionality problems it faced on its previous attempt to conduct jurisdictional discovery. Each motion will be addressed separately.

I.    Filing No. 126

Filing No. 126 requests leave to serve discovery on Third-Party Defendant CNR only. In its supporting brief, NKCR asks for discovery regarding:

   1) The nature and extent of CNR's physical presence in the State of Nebraska, including its ownership and maintenance of railroad tracks in this State;

2) CNR's relationship to the subject railcar, including the dates the railcar travelled on its tracks, and whether the railcar travelled on CNR's purported railroad track in Nebraska; and

3) The specific dates, times, and locations in which CNR inspected and/or moved the subject railcar.

(Filing No. 127 at CM/ECF pp. 4-5).

As to the first category, CNR argues that it has produced two declarations which aver that CNR has no physical presence in Nebraska. (Filing No. 138-1 at CM/ECF pp. 3-4, ¶ 3, 5, 9). CNR further argues that it has declared, under penalty of perjury, that it does not own any track, conduct any business, or have any employees in Nebraska. (Filing No. 138-1 at CM/ECF p. 4, ¶ 9). As a result of these representations, CNR asserts that jurisdictional discovery into the nature and extent of CNR's physical presence in Nebraska is completely unnecessary.

The court agrees. NKCR has not shown that the record is "ambiguous" or "unclear" as to CNR's physical presence (or lack thereof). Shoemoney, No. 8:09CV131, 2009 WL 1383281, at *6. CNR represents that it has no physical presence in Nebraska, and NKCR has asserted no argument to the contrary.[1]

As to the second and third categories, CNR represents that it previously moved the subject railcar on dates in 2018 and 2019 and that the last date that CNR or any of its subsidiaries moved the subject railcar was March 16, 2019. (Filing No. 137 at

---

[1] In fairness, NKCR argues that CNR's website claims that the company operates "lines extending west to Nebraska." (Filing No. 127 at CM/ECF p. 2). However, CNR claims that it has an indirectly owned subsidiary – Chicago, Central & Pacific Railroad Company ("CCP") – that owns 1.5 miles of rail track within Nebraska and that the website references that subsidiary's Nebraska rail track. (Filing No. 138-1 at CM/ECF p. 2, ¶ 5). NKCR was aware of CNR's explanation of that reference prior to full submission of this motion and mentions, but does not contest, that description in its reply. On this record, the court does not believe that the ownership of the 1.5 miles of track at issue is ambiguous or unclear. And regardless, "[w]hether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent." Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008).

CM/ECF p. 5). CNR claims that neither CNR nor any of its subsidiaries have ever moved the subject railcar into Nebraska and that the subject railcar never traveled on the Nebraska rail track owned by CNR's subsidiary CCP. (Filing No. 137 at CM/ECF p. 5).

NKCR claims that the foregoing does not fully address the relevant issues. Citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) NKCR asserts that CNR placed the railcar into the "stream of commerce" when it moved and/or inspected the railcar prior to the incident giving rise to this lawsuit. (Filing No. 141 at CM/ECF p. 2). NKCR argues that Woodson stands for the proposition that "a forum may exercise 'personal jurisdiction over a corporation that delivers its products into the stream of commerce' as long as the sales arise from the corporation's efforts 'to serve, directly or indirectly, the market for its product in other states'" and that CNR's actions meet that threshold. (Filing No. 141 at CM/ECF p. 2) (quoting Woodson, 444 U.S. at 298).

In Woodson, a products liability case, the Supreme Court held that there was no personal jurisdiction over an automobile retailer and its wholesale distributor after an automobile sold in New York was involved in an accident in Oklahoma. Plaintiffs sued the retailer and wholesaler in federal district court in Oklahoma after the Audi vehicle they were driving burst into flames following a traffic accident in that state.

Woodson reasoned:

Petitioners carry on no activity whatsoever in Oklahoma; they close no sales and perform no services there, avail themselves of none of the benefits of Oklahoma law, and solicit no business there either through salespersons or through advertising reasonably calculated to reach that State. Nor does the record show that they regularly sell cars to Oklahoma residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. Although it is foreseeable that automobiles sold by petitioners would travel to Oklahoma and that the

automobile here might cause injury in Oklahoma, "foreseeability" alone is not a sufficient benchmark for personal jurisdiction under the Due Process Clause. The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State, but rather is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.

Woodson, 444 U.S. at 298.

NKCR seeks the opposite result. NKCR argues that it is "already established that CNR placed the subject railcar into the stream of commerce."[2] (Filing No. 141 at CM/ECF p. 2). But in addition, NKCR seeks limited discovery as to whether any activity was purposefully directed at Nebraska, including "whether the railcar was interchanged pursuant to a partnership or agreement to pull the car into or through the State of Nebraska or, more generally, whether CNR knew of the railcar's whereabouts, including its travel through the discrete, multi-State area that includes Nebraska." (Filing No. 141 at CM/ECF p. 2). CNR avers, however, that once the subject railcar was returned to interchange service on March 16, 2019, CNR had no knowledge of its subsequent movements. (Filing No. 138-1 at CM/ECF p. 4, ¶ 17).

So, to recap, CNR has (1) clarified that it has no physical presence in Nebraska, (2) indicated that the last date it possessed the subject railcar was March 16, 2019, (3) averred that it never moved the subject railcar into Nebraska, and (4) stated it has no knowledge of the railcar's movement into Nebraska after CNR returned it to the interchange service.

---

[2] It is not entirely clear how this is established, and NKCR does not elaborate. It is true that CNR used the subject railcar, returned it to the interchange service, and that it was then used by other railroad entities. NKCR cites no case holding that a railroad's return of a railcar to the interchange service is equivalent to placing it into the "stream of commerce." Moreover, although not entirely the same argument, the Eighth Circuit has previously held that placing a railcar in the interchange in one state does not create personal jurisdiction in a different state, when the railcar was transported to that state by an unrelated third-party. Soo Line R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 529 (8th Cir. 1991).

Given the foregoing, it is not clear to the court how jurisdictional discovery would have any benefit whatsoever. There are no jurisdictional facts that are "unclear or ambiguous." Shoemoney, No. 8:09CV131, 2009 WL 1383281, at *6. NKCR may claim that it needs more information related to whether CNR interchanged the subject railcar "pursuant to a partnership or agreement to pull the car into or through the State of Nebraska." (Filing No. 141 at CM/ECF p. 2). However, NKCR is simply speculating that such an agreement perhaps exists. That is not enough. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1074 n.1 (8th Cir.2004) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."); Clim-A-Tech Industries, Inc. v. Ebert, 2015 WL 2195115, *10-*11 (D. Minn. 2015) ("In the Eighth Circuit, jurisdictional discovery is not warranted when the plaintiff fail[s] to rebut the defendants' assertions against jurisdiction and offer[s] only conclusory allegations to support [its] claim that personal jurisdiction exists[.]").[3]

Put differently, on the record before the court, jurisdictional discovery will delay resolution of this case, and that delay outweighs any benefit from further probing CNR's contacts with Nebraska. While the court is cognizant of NKCR's effort to tailor the scope of its request more narrowly, its request is still not proportional to the needs of this litigation. NKCR's Motion (Filing No. 126) will be denied.

II.    Filing No. 142

NKCR has also filed a Motion for Leave to Conduct Jurisdictional Discovery as to Third-Party Defendants Wisconsin Central, Soo Line, and Canadian Pacific, (Filing

---

[3] Wisconsin Central, in its briefing, indicates that such a contract does not exist as it relates to its parent, CNR. (Filing No. 149 at CM/ECF p. 6).

No. 142).[4] As to these Third-Party Defendants, NKCR requests the following discovery:

1) [Their] relationship to the subject railcar, including the dates the railcar travelled on its tracks, the dates it was interchanged to a different railroad, and the railroad to which it was interchanged.

2) The specific dates, times, and locations in which the Third Party Defendants inspected and/or moved the subject railcar, and whether the Third Party Defendants knew at these times the railcar would be pulled into or through the State of Nebraska and /or this "discrete, multi-State area."

(Filing No. 143 at CM/ECF p. 3).  In support of its discovery requests, NKCR restates its "stream of commerce" argument described and analyzed above. In its reply (Filing No. 152), NKCR clarifies it position somewhat:

To be clear, NKCR does not contend that jurisdiction is established simply because a railcar was placed into the stream of commerce by several foreign corporations. Rather, NKCR seeks limited jurisdictional information regarding the circumstances of this interchange, including potential partnerships or agreements to pull the car into or through the State of Nebraska or, more generally, the Third Party Defendants' knowledge of the railcar's whereabouts, including its travel through this multi-state area.

(Filing No. 152 at CM/ECF p. 2).

As to Wisconsin Central, the last date that either Wisconsin Central or one of its parents and/or subsidiaries possessed the railcar was March 16, 2019, and Wisconsin Central has no knowledge about what happened to railcar after placing it

---

[4] NKCR's third-party complaint makes collective allegations regarding Soo Line and Canadian Pacific, who are a subsidiary and a parent entity, respectively. As a result, their briefing on this motion is nearly identical. However, the court has treated them separately for the purpose of this discovery issue. They are individual defendants, and NKCR has moved for jurisdictional discovery from each, individually. Likewise, NKCR has moved for discovery from Wisconsin Central and CNR individually (on separate motions) but treated them collectively in its third-party complaint. The court has treated them separately in this order because discovery is sought from each.

into interchange service. ([Filing No. 149 at CM/ECF p. 6](#)). Wisconsin Central further states that it never moved the subject railcar into Nebraska and has no contractual relationships with other railroads under which it would pay another railroad to move the subject railcar into Nebraska. ([Filing No. 149 at CM/ECF p. 6](#)).

As to Soo Line and Canadian Pacific, NKCR alleges that their last contact with the subject railcar was on September 5, 2018, and neither railroad contests that date. Soo Line and Canadian Pacific specifically state that they returned the railcar through the interchange service in 2018, and "had no control over the car's movement" thereafter. ([Filing No. 147 at CM/ECF p. 6](#)). Moreover, Soo Line and Canadian Pacific assert that they "neither repaired nor moved the railcar in Nebraska, and [ ] did not direct any other railroad to do so." ([Filing No. 147 at CM/ECF p. 6](#)). They argue that they have no "contracts wherein [they] could direct another railroad to move a railcar into Nebraska on Soo Line [or Canadian Pacific's] behalf." ([Filing No. 147 at CM/ECF p. 6](#)).

To summarize, Wisconsin Central, Soo Line, and Canadian Pacific have each filed evidence disclaiming any knowledge on NKCR's stated purposes for conducting jurisdictional discovery; that is, exploring the circumstances of this interchange, any partnerships or agreements to pull the car into or through Nebraska, and any knowledge of the railcar's travel route and whereabouts. These Third Party Defendants state they lack information about the railcar's whereabouts after they returned it to the interchange. And all three specifically aver that they do not have contractual relationships that would have allowed a third-party to pull the railcar into Nebraska on their behalf. Based on this record, there are no necessary facts that are sufficiently disputed or unclear as to warrant jurisdictional discovery, ([Shoemoney, No. 8:09CV131, 2009 WL 1383281](#), at *6), and the existence of additional information to be gleaned from discovery appears to be purely speculative. Discovery will not be permitted and the motion at [Filing No. 142](#) will be denied.

For clarity, the undersigned takes no position on the merits of the pending motions to dismiss. This order simply concludes that NKCR has failed to establish that there are unclear or ambiguous jurisdictional facts or that discovery is necessary to fully litigate the jurisdictional issues.

Accordingly, IT IS ORDERED NKCR's Motions for Jurisdictional Discovery (Filing Nos. 126 and 142) are denied in their entirety.

Dated this 5th day of February, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge